ORIGINAL

**FILED IN OPEN COURT**
U.S.D.C ATLANTA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA   AUG 1 4 2007

ATLANTA DIVISION

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL INDICTMENT |
| v. | : | |
| | : | NO. 1:06-CR-155-CAP |
| ADRIENE NEWBY-ALLEN, | : | |
| a/k/a Cassandra Miller, | : | (SECOND SUPERSEDING) |
| BRINSON ALLEN, | : | |
| JAMES HOWARD BAILEY, III, | : | |
| MARY REAGAN and | : | |
| JOEY J. BLACKWELL | : | |

THE GRAND JURY CHARGES THAT:

COUNT ONE
(Conspiracy)
18 U.S.C. § 1349

1.  Beginning on a date currently unknown to the Grand Jury, but at least as early as in or about mid-2004, and continuing thereafter up to on or about March 20, 2006, in the Northern District of Georgia and elsewhere, defendants ADRIENE NEWBY-ALLEN, a/k/a Cassandra Miller, BRINSON ALLEN, JAMES HOWARD BAILEY, III, JOEY J. BLACKWELL and MARY REAGAN did willfully, knowingly and unlawfully combine, conspire, confederate, agree and have a tacit understanding with each other and with others both known and unknown to the Grand Jury to commit certain offenses against the United States, including the following:

## OBJECTS OF THE CONSPIRACY

A.    To knowingly execute and attempt to execute a scheme and artifice to defraud insured depository financial institutions, as defined in Title 18, United States Code, Section 20, by knowingly submitting and causing to be submitted materially false qualifying information and documentation and by making other materially fraudulent representations to obtain mortgage and home equity loans from said financial institutions, in violation of Title 18, United States Code, Section 1344; and

B.    To knowingly and willfully devise and intend to devise a scheme and artifice to defraud mortgage lenders by submitting and causing to be submitted materially false qualifying information and documentation and by making other materially fraudulent representations to obtain and to attempt to obtain mortgages and home equity loans and, in furtherance of said scheme and artifice to defraud, by causing interstate wire communications to be made in the course of seeking funding approval for said loans and by causing interstate wire transfers to be made to fund said loans and for other purposes, in violation of Title 18, United States Code, Section 1343.

## MANNER AND MEANS

2.    It was part of the defendants' conspiracy and the illegal objects thereof:

A.   That defendant ADRIENE NEWBY-ALLEN, a/k/a Cassandra Miller, recruited her husband, defendant BRINSON ALLEN, defendant JAMES HOWARD BAILEY, III of Houston, Texas, defendant JOEY J. BLACKWELL, and others to become "straw borrowers" for purposes of obtaining mortgage and home equity loans on a number of properties in the Atlanta, Georgia area;

B.   That the sales price of these properties was fraudulently inflated through the efforts of defendant NEWBY-ALLEN and her co-conspirators such that fraudulently inflated mortgage loans were obtained by defendants ALLEN, BAILEY, BLACKWELL and other straw purchasers, with the inflated loan proceeds being disbursed for the benefit of the defendants and their co-conspirators;

C.   That defendant ADRIENE NEWBY-ALLEN, a/k/a Cassandra Miller, worked with mortgage broker and co-conspirator J.D., a/k/a J.R., to cause false qualifying information, including borrower employment, income, assets and/or residency information, to be submitted to lenders to obtain fraudulent mortgage loans with defendants BRINSON ALLEN, JAMES HOWARD BAILEY, III, JOEY J. BLACKWELL and others acting as borrowers;

D.   That false representations were made to lenders, supported by counterfeit documentation, that defendants BRINSON ALLEN, JAMES HOWARD BAILEY, III, JOEY J. BLACKWELL and others possessed their own unencumbered and independent funds to make the

down payments required to qualify them as borrowers on the loans for which they applied;

E.   That defendant ADRIENE NEWBY-ALLEN, a/k/a Cassandra Miller, operating through her business, Swiss Acquisitions, Inc., funded the straw purchasers' down payments and borrower contributions for the false and fraudulent loans obtained in furtherance of the conspiracy;

F.   That defendant ADRIENE NEWBY-ALLEN, a/k/a Cassandra Miller, operating through her business, Swiss Acquisitions, Inc., took receipt of the fraudulent loan proceeds out of closing from defendant MARY REAGAN, a closing attorney, and others, and disbursed the fraudulent loan proceeds to her co-conspirators;

G.   That defendants BRINSON ALLEN, JAMES HOWARD BAILEY, III, JOEY J. BLACKWELL and others signed loan applications, primary and/or secondary residency certifications, HUD-1 Settlement Statements and other documents containing materially false qualifying information;

H.   That defendant MARY REAGAN, a closing attorney, closed false and fraudulent loans obtained by her co-conspirators through material misrepresentations and knowing omissions of material fact regarding legitimate sales prices, borrower qualifications and the use of loan proceeds made to the financial institutions, mortgage companies and other lending entities that underwrote these loans;

4

I.    That at or around the time of the loan closings, defendant ADRIENE NEWBY-ALLEN and her co-conspirators directed that the loan proceeds be disbursed so as to facilitate the defendants' profit from the fraudulently inflated loan amounts; and

J.    That defendant MARY REAGAN accommodated these directives by disbursing the proceeds of the loans she closed in contravention of her representations to lenders in the HUD-1 Settlement Statements and other closing documents she prepared and executed or caused to be prepared and executed in connection with the closings.

<u>OVERT ACTS</u>

3.    In furtherance of the defendants' conspiracy, and to effect the illegal objects and purposes thereof, various overt acts were committed by the defendants and their co-conspirators within the Northern District of Georgia and elsewhere, including but not limited to the following:

**<u>JAMES HOWARD BAILEY, III FRAUDULENT LOANS AND ATTEMPTS</u>**

<u>January 21, 2005 Purchase of 11795 King Road,
Roswell, Georgia</u>

A.    In or about late-2004, defendant ADRIENE NEWBY-ALLEN, a/k/a Cassandra Miller, worked with defendant JAMES HOWARD BAILEY, III, who resided in Houston, Texas, to enter into a Purchase and Sale Agreement to buy 11795 King Road in Roswell, Georgia for $1.6 million.    Defendants NEWBY-ALLEN and BAILEY submitted loan applications through co-conspirator J.D., a/k/a J.R., to Flagstar Bank and National City Bank, both financial institutions, to obtain

a $1,120,000 first mortgage and a $350,000 second mortgage for the
purchase of this property.

B.    On or about January 21, 2005, defendant BAILEY attended
the closings of the first and second mortgage loans for 11795 King
Road, where he:

> (1). signed loan documents containing false qualifying
> information and falsely representing that he would
> occupy the property as his primary residence; and

> (2). signed and certified as true a HUD-1 Settlement
> Statement which falsely represented that defendant
> BAILEY had contributed $517,000 of his own, non-
> borrowed funds to the transaction.

C.    Although the HUD-1 Settlement Statement for the January
21, 2005 closing of 11795 King Road reflects that, as borrower,
defendant BAILEY paid approximately $517,000 in cash to close the
transaction, in reality this amount was paid by defendant NEWBY-
ALLEN, who wrote a check to defendant MARY REAGAN to fund defendant
BAILEY's borrower contribution, contrary to the representation on
the HUD-1 Settlement Statement.   Defendant NEWBY-ALLEN also paid
defendant BAILEY's $5,000 earnest money deposit to defendant
REAGAN, again contrary to the representation on the HUD-1
Settlement Statement.

D.    In connection with the January 21, 2005 closing of 11795
King Road, defendant REAGAN, as closing agent, fraudulently wired

the following amounts to defendant NEWBY-ALLEN on or about the following dates:  $525,000 on or about January 21, 2005, $140,000 on or about January 24, 2005, and $340,730 on or about January 27, 2005.   In the aggregate, defendant REAGAN fraudulently wired a total of $1,005,730 in loan proceeds to defendant NEWBY-ALLEN at or around the January 21, 2005 closing of 11795 King Road.

E.    In exchange, defendant NEWBY-ALLEN fraudulently wired $45,000 to defendant REAGAN on or about January 24, 2005.

<u>February 22, 2005 Home Equity Line of Credit for<br>11795 King Road, Roswell, Georgia</u>

F.    On or about February 22, 2005, defendant JAMES HOWARD BAILEY, III signed a loan application for a $409,000 home equity line of credit on 11795 King Road from First Horizon Home Loan Corporation, a division of First Tennessee Bank, containing false qualifying information, including the false representations:

> (1).   that he had been employed by Diamond Health Care for four years where he made $32,500 a month;

> (2).   that he then had on deposit in two SunTrust Bank accounts $245,000 and $180,000; and

> (3).   that he would occupy the property as his primary residence.

G.    A false lease related to defendant BAILEY's true primary residence in Texas was also submitted to First Horizon/First Tennessee Bank in support of the false representation that 11795 King Road was his primary residence.

7

H.   Following their closings, defendant BAILEY failed to make the required payments on his $1,120,000 first mortgage, his $350,000 second mortgage and his $409,000 equity line on the 11795 King Road property, leading to their foreclosure.

### May 20, 2005 Purchase of 2300 Blackheath Trace, Alpharetta, Georgia

I.   In or about April 2005, defendant ADRIENE NEWBY-ALLEN, a/k/a Cassandra Miller, worked with defendant JAMES HOWARD BAILEY, III, who resided in Houston, Texas, to enter into a Purchase and Sale Agreement to buy 2300 Blackheath Trace in Alpharetta, Georgia for $3.2 million.   Defendants NEWBY-ALLEN and BAILEY submitted false loan applications through co-conspirator J.D., a/k/a J.R., to First National Bank of Arizona and to CitiBank FSB, both financial institutions, to obtain a $1,917,500 first mortgage and a $500,000 home equity line of credit for the purchase of this property.

J.   On or about May 20, 2005, in the Northern District of Georgia, defendant BAILEY attended the closings of the first mortgage and home equity loans for 2300 Blackheath Trace, where he:

(1).  signed loan documents that contained false qualifying information, including the false representations that he had been employed by Diamond Health Care for four years where he made $39,000 a month, that he had $255,131, $396,000 and $516,944 on deposit in three SunTrust Bank

accounts, and that he intended to occupy the property as his primary residence; and

(2). signed and certified as true a HUD-1 Settlement Statement that falsely represented that defendant BAILEY had contributed $823,000 in cash from his own, non-borrowed funds to the transaction.

K.   Although the HUD-1 Settlement Statement for the May 20, 2005 closing of 2300 Blackheath Trace reflects that, as borrower, defendant BAILEY paid approximately $823,000 in cash to close the transaction, in reality this amount was paid by defendant NEWBY-ALLEN, who wrote a check to defendant MARY REAGAN to fund defendant BAILEY's borrower contribution, contrary to the representation on the HUD-1 Settlement Statement.

L.   The "Cash to Seller" entry on the HUD-1 Settlement Statement for the May 20, 2005 closing of 2300 Blackheath Trace lists seller proceeds of $2,052,915.10.  Of this amount, defendant REAGAN, as closing agent, fraudulently wired $251,540 to the sellers on or about May 23, 2005 and $1,801,345.10 to defendant NEWBY-ALLEN on or about May 23, 2005.

M.   In exchange, defendant NEWBY-ALLEN fraudulently wired $40,000 to defendant REAGAN on or about May 23, 2005.

N.   Defendant BAILEY thereafter failed to make the required payments on his $1,917,500 first mortgage and his $500,000 equity

9

line on the 2300 Blackheath Trace property, leading to their foreclosure.

<u>July 2005 Purchase of 680 Heards Ferry Road,<br>Atlanta, Georgia (Attempt)</u>

O. In or about July 2005, defendant ADRIENE NEWBY-ALLEN, a/k/a Cassandra Miller, worked with defendant JAMES HOWARD BAILEY, III, who resided in Houston, Texas, to enter into a Purchase and Sale Agreement to buy 680 Heards Ferry Road in Atlanta, Georgia for approximately $3.9 million. Defendants NEWBY-ALLEN and BAILEY submitted loan applications through co-conspirator J.D., a/k/a J.R., to CitiBank FSB and to another lender to obtain a first mortgage plus a $450,000 second mortgage from CitiBank for the purchase of this property as defendant BAILEY's secondary residence.

P. In or about July 2005, defendants NEWBY-ALLEN and BAILEY caused loan applications containing false qualifying information to be submitted to lenders, including CitiBank FSB, which included the following false representations:

      (1). that defendant BAILEY had been employed by Diamond Health Care for four years where he made $52,000 a month;

      (2). that he then had on deposit in three SunTrust Bank accounts $395,000, $785,000 and $921,000; and

      (3). that he intended to occupy the property as a secondary residence.

10

### JUNE 24, 2005 FRAUDULENT PURCHASE OF 261 HAWKS LAKE DRIVE, BALL GROUND, GEORGIA

Q.   In or about mid-2005, defendant ADRIENE NEWBY-ALLEN, a/k/a Cassandra Miller, recruited defendant JOEY BLACKWELL to act as a straw borrower for the $2.49 million purchase of 261 Hawks Lake Drive, Ball Ground, Georgia.

R.   Although the seller listed the property for $1.49 million, defendants NEWBY-ALLEN and MARY REAGAN ensured that defendant BLACKWELL obtained a first mortgage from Impac Funding Corporation for $1,743,000 and a second mortgage from National City Home Equity for $350,000 to pay the fraudulently inflated $2.49 million purchase price. Defendant BLACKWELL's loan application for these mortgages contained fraudulently inflated income and asset entries.   Defendant BLACKWELL also signed multiple closing documents falsely representing that $1 million of the $2.49 million purchase price would be held in escrow for general contracting and home improvements.

S.   Defendant REAGAN prepared two HUD-1 Settlement Statements for the June 24, 2005 closing of straw borrower BLACKWELL's purchase of 261 Hawks Lake Drive.   The seller signed one HUD-1 at closing, while the lenders received a second, fraudulently inflated HUD-1 prepared by defendant REAGAN.

T.   Although the HUD-1 Settlement Statement for the June 24, 2005 closing of 261 Hawks Lake Drive reflects that, as borrower, defendant BLACKWELL paid approximately $456,000 in cash to close

11

the transaction, in reality this amount was paid by defendant NEWBY-ALLEN, who wrote a check to defendant MARY REAGAN to fund defendant BLACKWELL's borrower contribution.

U.   The "Cash to Seller" entry on the HUD-1 Settlement Statement for the June 24, 2005 closing of 261 Hawks Lake Drive lists seller proceeds of $1,299,955.12.  Of this amount, defendant REAGAN, as closing agent, disbursed only $300,955.12 to the seller, with defendant NEWBY-ALLEN realizing $475,000.  Defendant NEWBY-ALLEN also wired $393,687.97 in loan proceeds to defendant BLACKWELL.

## BRINSON ALLEN FRAUDULENT LOANS AND ATTEMPTS

### August 31, 2005 Lot Purchase, 10890 Bell Road, Duluth, Georgia

V.   In or about mid-2005, defendant ADRIENE NEWBY-ALLEN, a/k/a Cassandra Miller, caused a $459,043 Purchase and Sale Agreement to be signed for the purchase of a vacant lot at 10890 Bell Road in Duluth, Georgia.  Defendant NEWBY-ALLEN also caused a loan application in her name and in the name of defendant BRINSON ALLEN to be submitted to IndyMac Bank for a $365,000 mortgage loan to purchase said lot.   Defendant ALLEN's loan application underlying this mortgage misrepresented his employment status and income.

W.   On or about August 31, 2005, defendants NEWBY-ALLEN and ALLEN attended the closing of the mortgage loan for the lot located at 10890 Bell Road.   Both defendants signed a HUD-1 Settlement

Statement and defendant BRINSON ALLEN signed a loan application falsely representing certain qualifying information, causing IndyMac Bank to fund the $365,000 mortgage loan.

<u>November 2005 Construction Loan for 10890 Bell Road,</u>
<u>Duluth, Georgia (Attempt)</u>

X.   Beginning in or about November 2005, defendants ADRIENE NEWBY-ALLEN, a/k/a Cassandra Miller, and BRINSON ALLEN attempted to obtain, in the borrower name of defendant ALLEN, a $2.25 million construction loan from IndyMac Bank based upon false qualifying information.   The purpose of the loan was to construct a $3.5 million house at 10890 Bell Road, the lot acquired by defendants NEWBY-ALLEN and ALLEN using a fraudulently obtained $365,000 IndyMac mortgage loan.

<u>$3.3 Million Purchase of 320 Longvue Court,</u>
<u>Duluth, Georgia (Attempts)</u>

Y.   On or about November 16, 2005, defendant ADRIENE NEWBY-ALLEN, using the name "Cassandra Miller," signed a $3.3 million Purchase and Sale Agreement for 320 Longvue Court, Duluth, Georgia. At the time, the property was listed for $1,650,000, after the sellers had reduced its price by $99,000 in August 2005.  Defendant NEWBY-ALLEN advised the sellers that an additional $1,650,000 was required for design and construction.

Z.   On or about November 22, 2005, defendant BRINSON ALLEN signed a $3.3 million Purchase and Sale Agreement to purchase 320 Longvue Court, Duluth, Georgia, thereby replacing the Purchase and

13

Sale Agreement previously signed by his wife, defendant ADRIENE NEWBY-ALLEN, using the name Cassandra Miller.  The property was at the time still listed for sale at $1,650,000, after the sellers' $99,000 price reduction in August 2005.

AA.  On or about November 26, 2005, defendant BRINSON ALLEN signed a check for $10,000 drawn on the Wachovia Bank account of Swiss Acquisitions, Inc., defendant NEWBY-ALLEN's business, as earnest money for his $3.3 million purchase of 320 Longvue Court.

BB.  On or about December 30, 2005, defendant NEWBY-ALLEN caused co-conspirator J.D., a/k/a J.R., to fax the sellers of 320 Longvue Court a false conditional approval letter from IndyMac Bank for the funding of a $3.3 million mortgage loan, contingent upon the sale price matching the list price.  Thereafter, on or about January 3, 2006, the sellers increased the list price of 320 Longvue Court to $3.3 million.

CC.  On or about January 3 and 10, 2006, defendant NEWBY-ALLEN and co-conspirator J.D., a/k/a J.R., caused mortgage loan applications in the borrower name of defendant BRINSON ALLEN to be submitted to Citi Home Equity, a wholly owned subsidiary of CitiBank FSB, for a portion of the $3.3 million purchase price of 320 Longvue Court.  These loan applications contained false entries, including listing defendant ALLEN's employer as "Federal Bureau of Investigations/Home Land Security," his occupation as

"FBI Agent Officer of Homeland Security," and his income as $45,000 per month.

DD.  The first application, submitted on or about January 3, 2006, also falsely represented that defendant ALLEN had $900,000 on deposit in a specified Bank of America account, $195,000 on deposit in a specified SunTrust Bank account and $30,000 on deposit in a specified Associated Federal Credit Union account.   Defendant NEWBY-ALLEN  and  co-conspirator  J.D.,  a/k/a  J.R.,  thereafter provided Citi Home Equity with counterfeit bank statements to verify these false deposits.

EE.  On or about February 10, 2006, defendant NEWBY-ALLEN and co-conspirator J.D., a/k/a J.R., caused a loan application in the borrower name of defendant BRINSON ALLEN for a $2,145,000 first mortgage to be submitted to SouthStar Funding for the purchase of 320 Longvue Court.   This application falsely represented the purchase price of the property to be $3.3 million, and that defendant ALLEN would pay 25 percent, or approximately $825,000, of the $3.3 million purchase price as a down payment from his own, non-borrowed funds.

FF.  On about February 10, 2006, defendant NEWBY-ALLEN and co-conspirator J.D., a/k/a J.R., caused false entries to be made on the SouthStar Funding loan application in the borrower name of defendant BRINSON ALLEN, including listing defendant ALLEN'S employer as Swiss Acquisitions, his position as co-owner and his

income as $62,000 per month.   The loan application also falsely represented that defendant ALLEN had $685,255 on deposit in a specified Bank of America account, $994,320 on deposit in a specified SunTrust Bank account, and $22,728 on deposit in a specified Associated Federal Credit Union account.   Defendant NEWBY-ALLEN and co-conspirator J.D., a/k/a J.R., thereafter provided SouthStar Funding with counterfeit bank statements to verify these false deposits.

GG.   On or about March 13, 2006, defendants BRINSON ALLEN and ADRIENE NEWBY-ALLEN attended the closings of the $2,145,000 SouthStar Funding first mortgage loan and the $330,000 Citi Home Equity/CitiBank FSB second mortgage loan related to the $3.3 million purchase of 320 Longvue Court. At closing, both defendants reviewed and signed loan applications containing misrepresentations regarding defendant ALLEN'S employment, income and assets.   In addition, defendant NEWBY-ALLEN advised the closing attorney that defendant ALLEN's required borrower down payment of $842,000 was available and would be provided.  To facilitate direct distribution of the loan proceeds to defendants NEWBY-ALLEN and ALLEN, Defendant NEWBY-ALLEN also directed that the closing attorney divide the sellers' proceeds into two checks.

HH.   From on or about January 22, 2006 through March 20, 2006, defendant ADRIENE NEWBY-ALLEN, a/k/a Cassandra Miller, and co-conspirator J.D., a/k/a J.R., also sought funding from the First

16

National Bank of Arizona, in the borrower name of defendant BRINSON ALLEN, for a mortgage loan on 320 Longvue Court, Duluth, Georgia, based on false qualifying information contained in defendant ALLEN's loan application.

II.   Counts 2 through 13 of this Second Superseding Indictment are incorporated herein by reference as an additional overt acts in furtherance of the defendants' conspiracy.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS TWO THROUGH TWELVE
(Bank Fraud)
18 U.S.C. § 1344

4.   The Grand Jury hereby realleges and incorporates by reference the factual allegations of paragraphs 1 through 3 of this Second Superseding Indictment as if the same were fully set forth herein.

5.   On or about the following dates, in the Northern District of Georgia and elsewhere, the below-listed defendants, aided and abetted by each other and by others both known and unknown to the Grand Jury, did knowingly execute and attempt to execute a scheme and artifice to defraud the below-listed financial institutions, the deposits of which were then insured by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent pretenses, representations and promises, in that the below-listed

17

defendants caused materially false and fraudulent qualifying information and documentation to be provided to the below-listed financial institutions regarding borrower employment, income, assets and residency, sales price and/or the source of down payments for purposes of obtaining and attempting to obtain mortgages and home equity loans from said financial institutions:

| COUNT | DATE | DEFENDANTS | BORROWER/ PROPERTY ADDRESS/ SALES PRICE | LENDER/ LOAN AMOUNT |
|---|---|---|---|---|
| 2 | 1/21/05 | NEWBY-ALLEN, BAILEY & REAGAN | JAMES H. BAILEY, III 11795 King Rd $1.6 million | Flagstar Bank $1,120,000 1st mortgage |
| 3 | 1/21/05 | NEWBY-ALLEN, BAILEY & REAGAN | JAMES H. BAILEY, III 11795 King Rd $1.6 million | National City Bank $350,000 2nd mortgage |
| 4 | 2/22/05 | NEWBY-ALLEN & BAILEY | JAMES H. BAILEY, III 11795 King Rd $1.6 million | First Tennessee Bank $409,000 home equity line |
| 5 | 5/20/05 | NEWBY-ALLEN, BAILEY & REAGAN | JAMES H. BAILEY, III 2300 Blackheath Tr $3.2 million | First National Bank of Arizona $1,917,500 1st mortgage |
| 6 | 5/20/05 | NEWBY-ALLEN, BAILEY & REAGAN | JAMES H. BAILEY, III 2300 Blackheath Tr $3.2 million | CitiBank FSB $500,000 home equity line |
| 7 | 4/05 to 7/25/05 | NEWBY-ALLEN & BAILEY | JAMES H. BAILEY, III 680 Heards Ferry $3.9 million | CitiBank FSB $450,000 2nd mortgage (attempt) |
| 8 | 8/31/05 | NEWBY-ALLEN & ALLEN | BRINSON ALLEN 10890 Bell Rd $459,043 | IndyMac Bank $365,000 mortgage for lot purchase |
| 9 | 11/15/05 to 3/13/06 | NEWBY-ALLEN & ALLEN | BRINSON ALLEN 320 Longvue Ct $3.3 million | CitiBank FSB $330,000 2nd mortgage (attempt) |
| 10 | 1/22/06 to 3/20/06 | NEWBY-ALLEN & ALLEN | BRINSON ALLEN 320 Longvue Ct $3.3 million | First National Bank of Arizona 1st mortgage (attempt) |

| 11 | 11/05 to 1/30/06 | NEWBY-ALLEN & ALLEN | BRINSON ALLEN 10890 Bell Rd $3.5 million | IndyMac Bank $2,250,000 construction loan (attempt) |
| 12 | 6/24/05 | NEWBY-ALLEN, BLACKWELL & REAGAN | JOEY BLACKWELL 261 Hawks Lake Dr $2.49 million | National City Home Equity $350,000 2nd mortgage |

All in violation of Title 18, United States Code, Sections 1344 and 2.

### COUNT THIRTEEN
### (Wire Fraud)
### 18 U.S.C. § 1343

6.    The Grand Jury hereby realleges and incorporates by reference the factual allegations of paragraphs 1 through 3 of this Second Superseding Indictment as if the same were fully set forth herein.

7.    On or about June 24, 2005, in the Northern District of Georgia and elsewhere, defendants ADRIENE NEWBY-ALLEN, JOEY J. BLACKWELL and MARY REAGAN, aided and abetted by one another, having knowingly and willfully devised and intended to devise a scheme and artifice to defraud lenders in connection with obtaining mortgages and home equity loans, did, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud, cause to be transmitted in interstate commerce, by means of a wire communication, certain signs, signals and sounds; that is, defendants NEWBY-ALLEN, BLACKWELL and REAGAN caused Impac Funding

Corporation, a mortgage lender, to wire $1,777,376.93 in interstate commerce from UBS Real Estate Securities in New York, New York to defendant REAGAN's escrow account in the Northern District of Georgia to fund a first mortgage for the June 24, 2005 purchase, for $2.49 million, of 261 Hawks Lake Drive, Ball Ground, Georgia by straw borrower BLACKWELL.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FOURTEEN
(False Statements in Line of Credit Application)
18 U.S.C. § 1014

8.   The Grand Jury hereby realleges and incorporates by reference the factual allegations of paragraphs 1 through 3 of this Second Superseding Indictment as if the same were fully set forth herein.

9.   On or about October 20, 2004, in the Northern District of Georgia and elsewhere, defendant BRINSON ALLEN, aided and abetted by defendant ADRIENE NEWBY-ALLEN, did knowingly make and cause to be made false statements to Bank of America, an institution the deposits of which were then insured by the Federal Deposit Insurance Corporation, namely false representations regarding business history, gross business receipts and the use of loan proceeds, for the purpose of influencing the actions of Bank of

20

America, namely to extend a $50,000 line of credit to F&R Computer

Solutions, Inc., defendant ALLEN's business, in violation of Title

18, United States Code, Sections 1014 and 2.


COUNT FIFTEEN
(False Statements in Loan Application)
18 U.S.C. § 1014

10.   The Grand Jury hereby realleges and incorporates by

reference the factual allegations of paragraphs 1 through 3 of this

Second Superseding Indictment as if the same were fully set forth

herein.

11.   On or about December 16, 2004, in the Northern District

of Georgia and elsewhere, defendant BRINSON ALLEN, aided and

abetted by defendant ADRIENE NEWBY-ALLEN, did knowingly make and

cause to be made false statements to Bank of America, an

institution the deposits of which were then insured by the Federal

Deposit Insurance Corporation, namely false representations of

employment and monthly income, for the purpose of influencing the

actions of Bank of America, namely to extend an approximately

$61,600 loan to defendant ALLEN for the purchase of a 2005 Hummer

H2, in violation of Title 18, United States Code, Sections 1014 and

2.

FORFEITURE PROVISION

12.   Upon conviction of one or more of the offenses alleged in Counts 1 through 15 of this Second Superseding Indictment, defendants ADRIENE NEWBY-ALLEN, a/k/a Cassandra Miller, BRINSON ALLEN, JAMES HOWARD BAILEY, III, JOEY J. BLACKWELL and MARY REAGAN shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of the said violations.

13.   If, as a result of any act or omission of the defendant, any property subject to forfeiture:

A.   cannot be located upon the exercise of due diligence;

B.   has been transferred or sold to, or deposited with, a third person;

C.   has been placed beyond the jurisdiction of the Court;

D.   has been substantially diminished in value; or

E.   has been commingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant Title 18, United States Code, Section 982(b) and Title 21, United States Code, Section 853(p), to

22

seek forfeiture of any other property of said defendant up to the
value of the forfeitable property.

A ___*True*___ BILL

FOREPERSON

DAVID E. NAHMAIS
UNITED STATES ATTORNEY

PAUL N. MONNIN
ASSISTANT UNITED STATES ATTORNEY

Georgia Bar No. 516612

600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, Georgia 30303
(404) 581-5189
(404) 581-6181 (facsimile)